Donofrio, J.
{¶ 1} Defendants-appellants, Jeff Miley d.b.a. Miley Gas Company and Antero Resources Corporation, appeal from a Monroe County Common Pleas Court judgment *895 in favor of plaintiff-appellee, George Pfalzgraf,[1] declaring that the oil and gas lease at issue was cancelled for lack of production in paying quantities, following a bench trial.
{¶ 2} Appellee George Pfalzgraf (Pfalzgraf) is the owner of approximately 100 acres of property located in Seneca Township (the Property). In 1954, the Property was owned by Isabelle Pfalzgraf, Pfalzgraf's mother. Isabelle entered into an oil and gas lease on June 11, 1954, with H.A. and R.M. Burns for the Property (the Lease). The Lease was for a primary term of one year and "so much longer thereafter as oil, gas or their constituents are produced in paying quantities thereon." Pfalzgraf acquired the Property from Isabelle in 1966. A single well, the Pfalzgraf No. 2 Well, is located on the Property.
{¶ 3} Jeff Miley is the owner of Appellant Miley Gas Company (Miley). On April 11, 2011, RMB Corporation assigned the Lease to Miley. The next year, Miley assigned the deep rights associated with the Lease to Appellant Antero Resources Corporation (Antero).
{¶ 4} Pfalzgraf resides on a 60-acre parcel of property adjacent to the Property. He has a private domestic gas well located on this 60-acre parcel.
{¶ 5} Many years ago, Miles Burns, the predecessor in interest to RMB Corporation, entered into a "Gentlemen's Agreement" with Pfalzgraf whereby they agreed to connect the Pfalzgraf No. 2 Well with Pfalzgraf's domestic well and to sell gas from both wells through a common meter and sales line. Pursuant to this agreement, (1) the Pfalzgraf No. 2 Well was hooked up with Pfalzgraf's domestic well, (2) the gas from both wells ran through the same meter, (3) Pfalzgraf was entitled to use free gas from the Pfalzgraf No. 2 Well to help heat his home, and (4) Pfalzgraf received a one-eighth royalty from the sale of the gas from both wells. In 2012, this Gentlemen's Agreement was made into a written agreement between Pfalzgraf and Jeff Miley. The Pfalzgraf No. 2 Well and the domestic well still run through the same meter.
{¶ 6} Miley also owns and operates another well, the Isabelle Pfalzgraf No. 1 Well, located on a nearby 27-acre tract of land owned by someone other than Pfalzgraf.
{¶7} On November 22, 2013, Pfalzgraf and his late wife filed a declaratory judgment against Miley and Antero seeking a declaration that the Lease expired under its own terms due to lack of production in paying quantities. The complaint also sought a declaration that the Lease was terminated due to Miley's and Antero's breach of implied covenants to develop the land and market the oil and gas.
{¶ 8} The matter proceeded to a bench trial. The trial court found that the Lease was cancelled for lack of production in paying quantities. As to Pfalzgraf's second claim, the court found that Pfalzgraf failed to prove a breach of implied covenants under the Lease. Therefore, the court entered judgment in favor of Pfalzgraf declaring that the Lease had expired.
{¶ 9} Antero filed a timely notice of appeal on April 25, 2016. Miley also filed a timely notice of appeal. This court consolidated the two appeals.
*896 {¶ 10} Miley raises five assignments of error. Antero raises four assignments of error. Several of their assignments of error raise the same arguments. Therefore, we will address those assignments of error together.
{¶ 11} Miley's first assignment of error states:
THE TRIAL COURT ERRED IN PLACING THE BURDEN OF PROOF ON APPELLANT/DEFENDANT TO SHOW PRODUCTION IN PAYING QUANTITIES.
{¶ 12} Antero's second assignment of error states:
THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT USE THE CORRECT LEGAL STANDARD AND BURDEN OF PROOF IN DETERMINING IF THERE WAS PRODUCTION IN PAYING QUANTITIES.
{¶ 13} Miley argues the trial court improperly shifted the burden of proof to it to show that the Well was producing in paying quantities. Instead, Miley asserts, the burden was to be on Pfalzgraf to show that the Well was not producing in paying quantities. It relies on this court's decision in Burkhart Family Trust v. Antero Resources Corp. , 7th Dist., 2016-Ohio-4817, 68 N.E.3d 142, appeal not allowed, 147 Ohio St.3d 1437, 2016-Ohio-7677, 63 N.E.3d 156, where we found that the lessor failed to meet its burden to show that wells were not producing oil and gas in paying quantities.
{¶ 14} Miley claims it was undisputed that the Well was producing. Therefore, the only question was whether the Well was producing in paying quantities. Miley asserts Pfalzgraf failed to meet his burden of showing non-production in paying quantities. It asserts Pfalzgraf presented no evidence to prove his case.
{¶ 15} Antero agrees that the trial court improperly shifted the burden of proof to Miley to show that the Well was producing in paying quantities. It points out that the Pfalzgrafs instituted this lawsuit alleging the Well was not producing in paying quantities. Therefore, it claims the burden was on Pfalzgraf to prove lack of paying quantities.
{¶ 16} Antero further argues the trial court should have granted its motion for directed verdict because Pfalzgraf failed to meet his burden of proof as to lack of production in paying quantities in his case-in-chief.
{¶ 17} After the primary term of an oil and gas lease expires, if the conditions of the secondary term are not being met, then the lease terminates by the express terms of the contract and by operation of law and revests the leased estate in the lessor. Swallie v. Rousenberg , 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), ¶ 63. It is common for the secondary term of the lease to be conditioned upon oil or gas being produced in paying quantities. Dennison Bridge, Inc. v. Resource Energy, L.L.C. , 7th Dist., 2015-Ohio-4736, 50 N.E.3d 242, ¶ 21.
{¶ 18} The term "paying quantities," when used in the habendum clause of an oil and gas lease, generally mean quantities of oil or gas sufficient to yield even a small profit to the lessee over operating expenses, even though such things as drilling costs or equipping costs are not recovered which may result in the undertaking as a whole suffering a loss. Blausey v. Stein , 61 Ohio St.2d 264, 265-266, 400 N.E.2d 408 (1980).
{¶ 19} In determining whether a well is profitable, courts look to the discretion of the lessee. Lang v. Weiss Drilling Co. , 7th Dist., 2016-Ohio-8213, 70 N.E.3d 625, ¶ 34. Although the lessee has discretion *897 to determine a well's profitability, the determination of whether a well is profitable cannot be arbitrary. Id. Courts impose a standard of good faith on the lessee. Id.
{¶ 20} This case is controlled by our decision in Burkhart Family Trust , 7th Dist.
{¶ 21} In that case, the Burkhart Family Trust (BFT) filed a complaint against Antero and Tri-County seeking a declaratory judgment that a certain lease had been forfeited for lack of production in paying quantities. The matter proceeded to a bench trial and the trial court entered judgment in favor of BFT. Antero and Tri-County appealed to this court. They argued that the trial court improperly placed the burden of proof on them at trial to prove that the wells in question were producing in paying quantities. Id. at ¶ 10. Instead, they asserted, because BFT brought the complaint against them, the trial court should have placed the burden on BFT to prove that the wells were not producing in paying quantities. Id.
{¶ 22} This court started out by noting that although the case involved an oil and gas lease, its resolution depended on the Rules of Civil Procedure, specifically who held the burden of proof. Id. at ¶ 12. We found that although the trial court never directly stated which party bore the burden of proof, it was clear from the record that the court improperly shifted the burden to Antero and Tri-County. Id. For example, we pointed to the trial court's finding that Sulsberger, Tri-County's owner, had presented "no credible evidence to support his blanket assertion" that the wells were profitable. Id. We further pointed to the trial court's finding that Sulsberger did not keep a business ledger, bookkeeping software, or list of the income versus expenses for his company. Id.
{¶ 23} We went on to address Sulsberger's testimony. We noted that Sulsberger was BFT's sole witness. Id. at ¶ 15. Sulsberger testified that the wells were producing in paying quantities. Id. The trial court found Sulsberger's testimony to be not credible. Id. We found that while the trial court disbelieved Sulsberger, this did not lead to the conclusion that Sulsberger's testimony was evidence of the opposite, that being that the wells were not producing in paying quantities. Id. Instead, it left BFT with no credible witness. Id.
{¶ 24} We then addressed the trial court's finding that the wells did not produce in paying quantities. We noted that only some of the trial court's findings were relevant to whether the wells produced in paying quantities and those relevant findings were not supported by the record. Id. at ¶ 21.
{¶ 25} First, we pointed to the trial court's finding that Sulsberger had miscalculated the royalties paid to BFT. Id. at ¶ 22. We found that any miscalculation of royalties was irrelevant to the question of paying quantities. Id. Thus, we found the trial court improperly considered this factor.
{¶ 26} Second, we pointed to the trial court's finding that Sulsberger failed to report production to the ODNR and the county auditor. Id. at ¶ 23. We stated that the failure to file production reports with the ODNR did not add to the determination of whether a well is producing. Id. , citing Mobberly v. Wade , 7th Dist., 2015-Ohio-5287, 44 N.E.3d 313, ¶ 16.
{¶ 27} Third, we noted that while Sulsberger testified as to his Schedule C tax forms, they were not offered into evidence. Id. at ¶ 24. We noted that although Sulsberger testified that his Schedule C showed a loss in certain years, he testified that the form contained business expenses for all of his business projects, not just the *898 wells in question. Id. Therefore, while his Schedule C may have shown that his projects as a whole were unprofitable, it did not provide information specific to the wells at issue. Id. Thus, we found it had no evidentiary value to the issue of production in paying quantities. Id.
{¶ 28} Fourth, we noted that the trial court relied on its finding that Sulsberger was a poor record keeper. Id. at ¶ 25. We found that aside from its reliance on Sulsberger's lack of records, BFT did not present any evidence to support their position that the wells were not producing in paying quantities. Id.
{¶ 29} Fifth, we noted that Sulsberger regularly paid royalties to BFT. Id. at ¶ 25, 28. And we stated that while not conclusive, the payment of royalties is some evidence of production in paying quantities. Id. at ¶ 28.
{¶ 30} Finally, we noted that the trial court relied on the finding that Sulsberger's company stood to profit by holding on to the lease until deep drilling on the property was completed. Id. at ¶ 29. We found this finding to be irrelevant to the issue of paying quantities. Id.
{¶ 31} Based on all of the above, this court concluded:
While Mr. Sulsberger's lack of records is troubling and he clearly convinced the trial court that he was untruthful, the fact remains that the Burkhart family, on behalf of the Trust, had the burden of proving by means of evidence that the wells (that they admit produce) do not produce in paying quantities. In support of shifting the burden of proof to Appellants, Appellee argued at [the] hearing that this would force them into proving the negative. It is apparent the Burkhart family had the ability to use discovery to uncover evidence necessary to prove their assertions. Instead of subpoenaing Tri-County's records or subpoenaing any other type of evidentiary records on the issue of whether paying quantities of either gas or oil were being produced, the Burkhart family insists that Appellants were required to prove the production from the wells was adequate in order to withstand their demands for termination of the lease. As the Trust has failed to meet its burden, the trial court's judgment is erroneous.
Id. at ¶ 30.
{¶ 32} The Fourth and Fifth Districts have likewise found that the burden of proof in an oil and gas lease case is not controlled by substantive oil and gas law, but rather by civil procedure. Mauger v. Positron Energy Resources, Inc. , 5th Dist. No. 14AP0001, 2014-Ohio-4613, 2014 WL 5306930, ¶¶ 40-41 ; Positron Energy Resources, Inc. v. Weckbacher , 4th Dist. No. 07CA59, 2009-Ohio-1208, 2009 WL 690583, ¶¶ 18-19.
{¶ 33} In this case, the trial court incorrectly placed the burden on Miley to prove that the Well was producing in paying quantities instead of placing the burden on Pfalzgraf to prove that the Well was not producing in paying quantities. The trial court here, like the trial court in BFT , considered several factors we deemed in BFT to be irrelevant to a determination of paying quantities.
{¶ 34} First, the trial court found that Miley declared a loss of $10,211 on its taxes in 2012, and that during that year only $36,963 of its revenue came from gas sales. It also noted that Miley declared a loss of $72,126 in 2013. And it noted that Miley's tax returns showed decreased revenue from 2011 to 2014.
{¶ 35} Notably absent from the trial court's finding here is any mention of how the Well at issue performed. Miley's tax returns are not specific to the Well. They *899 encompass all of Miley's operations. And while Miley as a company overall may have declared losses in 2012 and 2014, there is no indication as to whether the Well produced oil and gas in paying quantities in those years. Therefore, the court erred in relying on this factor.
{¶ 36} Second, the trial court found that Miley did not report any production on any of its wells, including the Well at issue, for 2011 or 2012. Then in 2013, after a direction by Antero, Miley submitted production reports to the ODNR for 2011, 2012, and 2013. It also found it "significant" that Miley did not report any production in 2011 or 2012.
{¶ 37} We stated in BFT that "the failure to file production reports with ODNR does not add to the determination of whether a well is producing." Id. at ¶ 23, citing Mobberly , 2015-Ohio-5287, 44 N.E.3d 313, ¶ 16. Thus, the fact that Miley did not timely submit production reports to the ODNR does not help to determine whether the Well produced in paying quantities.
{¶ 38} Third, the trial court found it was undisputed by both Jeff and Mrs. Miley that it would be "virtually impossible" for a third party to look at documentary evidence presented by Miley and verify that the Lease was profitable.
{¶ 39} This statement by the trial court is an example of how the trial court placed the burden of proof on Miley to show production in paying quantities. We found similar statements by the trial court in BFT , to show that the trial court impermissibly shifted the burden of proof. Id. at ¶ 12 (where the trial court found Sulsberger did not keep a business ledger, did not have any electronic bookkeeping software, and did not keep a list of the income versus expenses). Thus, the trial court improperly shifted the burden from Pfalzgraf to Miley.
{¶ 40} Fourth, the trial court found that Miley had a "major financial incentive" to claim the Well is profitable and Miley "obviously stand[s] to profit immensely by maintaining the current lease." The court found that the deep rights were assigned to Antero whose production efforts could result in a "financial windfall" to Miley.
{¶ 41} In BFT , we specifically found that the trial court's reliance on the finding that the lessee stood to profit by holding onto the lease until deep drilling was completed was irrelevant to the issue of paying quantities. Id. at ¶ 29. In fact, we stated that whether the lessee would profit from deep drilling activities "has no bearing at all on the pertinent determination." Id. Thus, the trial court here also erred in relying on this factor.
{¶ 42} Fifth, the trial court found that "a Lessee [Miley] who claims his lease is profitable while the tax returns show a loss, casts real doubt on the actual profitability."
{¶ 43} This statement by the trial court is another example of the trial court relying on a factor that had no evidentiary value to the issue of whether the Well was producing in paying quantities. The tax returns were not specific to the Well. Instead, they encompassed all of Miley's businesses.
{¶ 44} Finally, the trial court found that Miley had been paying royalties to Pfalzgraf, although it found these royalties were estimates and were derived from the aggregate meter. "While not conclusive evidence, royalty payments can be evidence of production in paying quantities." RHDK Oil & Gas, L.L.C. v. Dye , 7th Dist. No. 14 HA 0019, 2016-Ohio-4654, 2016 WL 3522555, ¶ 30. Thus, the fact that Miley had been paying royalties to Pfalzgraf was *900 at least some evidence that the Well was producing in paying quantities.
{¶ 45} The party who asserts a claim in an oil and gas case, just as in any other civil case, carries the burden of proof. Burkhart Family Trust , 2016-Ohio-4817, 68 N.E.3d 142, at ¶ 13. Thus, in this case, the burden was on Pfalzgraf to prove that the Well was not producing in paying quantities. The trial court's findings, however, demonstrate that it placed the burden on Miley and Antero to prove the Well was producing in paying quantities. Moreover, in making its determination, the trial court relied on multiple factors this court has found to be irrelevant to a paying quantities determination. Therefore, the trial court erred in finding that the Well was not producing in paying quantities and in entering judgment in favor of Pfalzgraf.
{¶ 46} Accordingly, Miley's first assignment of error has merit and is sustained. Likewise, Antero's second assignment of error has merit and is sustained.
{¶ 47} Miley's second assignment of error states:
THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN FAVOR OF APPELLEE AND DECLARING APPELLANT'S OIL AND GAS LEASE CANCELLED.
{¶ 48} Antero's first assignment of error states:
THE TRIAL COURT ERRED IN ENTERING A JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE.
{¶ 49} Antero's third assignment of error states:
THE TRIAL COURT'S JUDGMENT AND DECISION ISSUED APRIL 1, 2016 ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND A VIOLATION OF SUBSTANTIAL JUSTICE.
{¶ 50} Here Miley contends the evidence demonstrated that the Well is producing in paying quantities. It asserts that the trial court's finding to the contrary is against the manifest weight of the evidence.
{¶ 51} Antero argues the trial court considered numerous factors that are irrelevant to a determination of whether a well is producing in paying quantities. These factors include an alleged major financial motive of Miley to continue the lease, failure to timely report production to the ODNR, losses declared in 2012 and 2013 on a company-wide Schedule C, miscalculation of royalties, and Miley's poor record keeping.
{¶ 52} We have already concluded in analyzing Miley's first assignment of error and Antero's second assignment of error that the trial court impermissibly placed the burden of proof on Miley and relied on irrelevant factors in reaching its decision. Based on this same determination, Miley's second assignment of error and Antero's first and third assignments of error have merit and are sustained.
{¶ 53} Miley's third assignment of error states:
THE TRIAL COURT ERRED IN APPLYING THE WRONG LEGAL STANDARD WHERE IT HELD THAT A COMPANY-WIDE TAX LOSS OR PROFIT ON A TAX RETURN, WHICH DOES NOT DETAIL EACH INDIVIDUAL WELL, DETERMINES WHETHER AN INDIVIDUAL WELL IS HELD FOR PRODUCTION IN PAYING QUANTITIES.
{¶ 54} Miley's fifth assignment of error states:
THE TRIAL COURT ERRED IN FINDING THAT A TAX LOSS IS EQUIVALENT TO A LACK OF PROFIT.
*901 {¶ 55} In these two assignments of error, Miley contends the trial court erred in finding that a Schedule C tax loss shows that the individual Well failed to produce in paying quantities. Miley asserts the testimony was undisputed that its Schedule C tax form does not detail the expenses or income of each individual well it operates. Instead, Miley claims, over 60 wells are reported. And Miley states that its tax returns include income and expenses for both the production side of its business as well as the swabbing and repair side of its business. In sum, Miley contends its tax returns were not indicative of the profitability of the Well at issue.
{¶ 56} Once again, based on our resolution above finding that the trial court incorrectly relied on the tax returns to show lack of paying quantities, Miley's third and fifth assignments of error have merit and are sustained.
{¶ 57} Miley's fourth assignment of error states:
THE TRIAL COURT ERRED FAILING TO CONSIDER THE AGREEMENT OF THE PARTIES PERMITTING THE SUBJECT WELL TO BE COMMONLY METERED WITH APPELLEE'S DOMESTIC WELL AND IN FAILING TO CONSIDER THE CORRESPONDING ODNR PRODUCTION RECORDS AND PROPORTIONAL ROYALTY PAYMENTS.
{¶ 58} Miley asserts here that the trial court failed to consider the written agreement by the parties that "Miley may continue to have these two wells hooked together with both wells being metered through the same meter [and] Pfalzgraf will continue to receive free gas from the wells and will receive the normal landowner's 1/8 royalty interest from production from both wells."
{¶ 59} Miley also asserts the court failed to consider ODNR Form 10, which shows that the production from the common meter is proportioned equally to each well tied into the meter.
{¶ 60} Based on our resolution of the previously addressed assignments of error, Miley's fourth assignment of error is moot.
{¶ 61} Antero's fourth assignment of error states:
THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE AFFIRMATIVE DEFENSES OF STATUTE OF LIMITATIONS, LACHES AND QUASI-ESTOPPEL ARE ALL UNAVAILABLE DEFENSES IN A CLAIM SEEKING FORFEITURE OF A LEASE FOR FAILURE TO PRODUCE IN PAYING QUANTITIES.
{¶ 62} Here Antero claims the trial court erred in denying its motion for a directed verdict based on several defenses it raised.
{¶ 63} First, Antero claims the trial court should have granted its motion for a directed verdict because the statute of limitations had expired. Antero argues that the eight-year statute of limitations set out in R.C. 2305.041 applies to cases involving the breach of an oil and gas lease. Alternatively, Antero argues that the ten-year statute of limitations for claims for equitable relief applies. Second, Antero claims the trial court should have granted its motion for a directed verdict to dismiss Pfalzgraf's claims as barred by the doctrine of laches. Finally, Antero claims the trial court should have granted its motion for a directed verdict to dismiss Pfalzgraf's claims as barred by the doctrine of quasi-estoppel.
{¶ 64} Each of Antero's asserted defenses would only come into consideration if it was shown that the Well had stopped producing in paying quantities. For instance, *902 any applicable statute of limitations would not start to run until the Well had ceased to produce in paying quantities for some period of time. Likewise laches, which requires unreasonable delay or lapse of time in asserting a right, would require a showing that Pfalzgraf waited an unreasonable amount of time after the Well stopped producing in paying quantities before filing his complaint. And equitable estoppel would require a showing that Pfalzgraf's behavior was inconsistent with his position that the Well had stopped producing in paying quantities and the Lease had terminated.
{¶ 65} Accordingly, based on our resolution of the previously addressed assignments of error, Antero's fourth assignment of error is moot.
{¶ 66} For the reasons stated above, the trial court's judgment is hereby reversed and judgment is entered in favor of Miley and Antero.
Robb, P.J., concurs
Waite, J., concurs

Plaintiff-appellee, George Pfalzgraf, filed the complaint in this matter with his wife Marjorie Pfalzgraf. On December 4, 2015, while the case was awaiting trial, counsel filed a suggestion of death informing the court that Marjorie had passed away and that George would be proceeding as the only plaintiff in the case. Thus, for purposes of this opinion, George Pfalzgraf is the only plaintiff-appellee.