[Cite as *Christman v. Condevco, Inc.*, 2020-Ohio-938.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

MICHAEL CHRISTMAN ET AL.,

Plaintiffs-Appellants,

v.

CONDEVCO, INC. ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MO 0008**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2016-147

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David Wigham, and Atty. Leighann Fink,* Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308, for Plaintiffs-Appellants and

*Atty. Kristopher Justice, Atty. Daniel Corcoran, and Atty. Adam Schwendeman,* Theisen Brock, 424 Second Street, Marietta, Ohio 45750, for Defendants- Appellees.

Dated:  March 5, 2020

**D'APOLITO, J.**

**{¶1}** Appellants, Michael and Crystal Christman, appeal from the February 19, 2019 judgment of the Monroe County Court of Common Pleas, granting summary judgment in favor of Appellees, Condevco, Inc., Deep Rock Investments, LLC, Flat Rock Development, LLC, Flat Rock Orion, LLC, Hartz Buckeye Energy, LLC, and Hartz Energy Capital, LLC.  On appeal, Appellants assert the trial court erred in granting Appellees' motion for summary judgment.  Appellants contend the trial court erred in wrongly determining the credibility of their expert witness.  Appellants further contend that genuine issues of material fact remain as to whether Appellee Condevco adopted Appellants' well ("Christman Well") and whether the Christman Well was producing oil and/or gas in paying quantities.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** Appellants own 141.62 acres of land, including the oil, gas, and associated mineral rights located in Monroe County, Ohio, Tax Parcel No. 16-022010.0000 ("Property").  On March 12, 2009, Appellant Michael Christman, the sole owner at the time, leased the oil and gas underlying the Property to Appellee Condevco, which was recorded on April 13, 2009 in the Monroe County Official Records at Volume 80, Page 686 ("Lease").  The remaining Appellees acquired an interest in the Lease through partial assignments from December 2011 through December 2014.

**{¶3}** The Lease provides for a three-year primary term, expiring on March 12, 2012.  (Lease, Exhibit B, Paragraph 2).  The secondary term of the Lease provides that the Lease will continue so long as oil or gas is produced in paying quantities from the leased premises or lands unitized or pooled with the leased premises, or drilling operations are continuously prosecuted on the leased premises, or the land is used for gas or substance injection purposes.  (*Id.*)  In addition to the habendum clause contained in Paragraph 2, the Lease additionally states:

> Lessor and Lessee are aware of orphan wells existing on the leased
> property and said wells are not made a part of the foregoing lease

agreement. Nothing in this lease implies or indicates that either party will have any obligation or responsibility for any existing wells on lease. Lessee shall have the option to evaluate existing wells and utilize these wells at his discretion and, if lessee decides to "adopt" an orphan well and return it to production, any royalty income will be considered to have the same effect as a newly drilled well for purposes of this lease.

(*Id.*, Paragraph 20).

**{¶4}** Condevco restored the Christman Well, API No. 34111230020000, located on the leased premises.[1] Brian and Christy Chavez, both officers of Condevco, indicated that Condevco made a capital investment of approximately $4,000 for materials and services. (Affidavits of Brian and Christy Chavez). In March 2011, Condevco hired Stampede Well Service to rework the Christman Well. Stampede swabbed the Christman Well and produced 16.5 barrels of fluid. Prior to March 12, 2012, the expiration date of the primary term of the Lease, Condevco produced $1,771.18 worth of oil from the Christman Well. (*Id.*) Since it has been reworked through May 2016, the Christman Well has produced $6,315.75 in gross revenue. (*Id.*)

**{¶5}** Appellants filed a complaint against Appellees on May 9, 2016 and an amended complaint with leave of court on July 9, 2018. Appellants alleged that the Lease had expired for lack of production in paying quantities. Appellants raised several claims, including: declaratory judgment; quiet title; ejectment; trespass; and conversion. Appellees filed answers and counterclaims. Appellants filed replies.

**{¶6}** On August 31, 2018, Appellees filed a motion for summary judgment, supported by affidavits from Brian and Christy Chavez. Appellants filed a memorandum in opposition, supported by an affidavit from their expert, Ronald Gibson. Appellees filed a reply, supported by additional affidavits from Brian and Christy Chavez, and an affidavit from their expert, Eddy Biehl.

---

[1] The Christman Well was drilled on the Property in 1983. At the time the parties entered into the Lease, the Christman Well was registered with the Ohio Department of Natural Resources ("ODNR") as an orphan well.

**{¶7}** Appellees also filed a motion to strike Gibson's affidavit. Appellees mainly asserted that Appellants had not made Gibson available for a deposition. Appellants filed a memorandum in opposition. Appellees filed a reply.

**{¶8}** On November 9, 2018, the trial court granted Appellees' motion to strike in part by allowing them to take Gibson's deposition. The court also permitted supplemental memoranda regarding summary judgment to be filed subsequent to the deposition.

**{¶9}** After taking Gibson's deposition, Appellees filed a supplement in support of their motion for summary judgment on December 28, 2018, supported by another affidavit from Brian Chavez. Appellants filed a memorandum in opposition along with a supplemental report from Gibson. Appellees filed a reply and moved to strike Gibson's supplemental report. Appellants filed a memorandum in opposition.

**{¶10}** On February 19, 2019, the trial court granted Appellees' motion for summary judgment, specifically stating:

> Christy Chavez and Brian Chavez, both officers of Condevco, testified that the Christman Well has produced oil and gas in paying quantities.
>
> Meanwhile, in his opinion/report, Ronald Gibson opined on behalf of Plaintiff that the Christman Well was not producing in paying quantities. This Court finds that Mr. Gibson's opinion is flawed in various respects.
>
> First, in his opinion/report, Ronald Gibson used an assumed labor rate of $30.00 per hour for Condevco's employees despite acknowledging that those employees are not paid $30.00 per hour by Condevco relating to the Christman Well.
>
> Second, Mr. Gibson admitted that his assumed ratio of oil to water produced from the Christman Well was based on a 2013 estimate, and that he did not know whether this estimate was based on any actual measurement. Mr. Gibson also admitted that his assumed ratio of oil to water was inconsistent with the ratio of oil to water that he measured in the tank during his inspection. Mr. Gibson admitted that the difference in the measured ratio

compared to what he had assumed could indicate that his ratio was "not correct."

Most troubling, however, were Mr. Gibson's assumptions regarding the combined cost of handling and trucking oil and brine water and of disposing brine water. More specifically, Mr. Gibson made ridiculous assumptions regarding the Christman Well's operating costs and then plugged these assumed costs into a formula that renders it nearly impossible for the within well to produce profitably. Mr. Gibson even acknowledged the ridiculousness and unreasonableness of his assumptions[.]

* * *

In effect, Mr. Gibson testified that when the price of oil is less than $68.18 per barrel, more production actually nets greater losses. It is evident to this Court that rather than offering an opinion about the actual profitability of the Christman Well, Mr. Gibson instead set a minimum oil price below which it is nearly impossible for Defendants to earn a profit.

Mr. Gibson went on to testify that the price of oil would need to be $215.00 per barrel in order for the Christman Well to break even based on the volumes of oil that were actually produced. He then acknowledged that the price of oil has never been that high.

This Court finds Mr. Gibson's calculations that the Christman Well was not profitably produc[ing] are farfetched and based on innuendo and baseless unreasonable assumptions.

Accordingly, based on the foregoing, this Court finds that Condevco adopted an orphan well (the Christman Well) and restored it to production before expiration of the primary term.

Likewise, this Court finds that there has been continuous production in paying quantities of oil and/or gas from the Christman Well in the secondary

Case No. 19 MO 0008

term. There remain no genuine issues of material fact to be litigated. The Lease remains valid and in full effect.

(2/19/2019 Judgment Entry, p. 6-9).

**{¶11}** Appellants filed a timely appeal and raised two assignments of error.

## STANDARD OF REVIEW

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is 'material' depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

'(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer*

*v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 10-12.

## <u>ASSIGNMENT OF ERROR NO. 1</u>

**{¶1} THE TRIAL COURT ERRED IN WEIGHING THE EVIDENCE IN FAVOR OF APPELLEES, THE MOVING PARTY, AND DETERMINING CREDIBILITY ISSUES ON SUMMARY JUDGMENT.**

**{¶12}** Appellants allege the trial court wrongly determined the credibility and improperly weighed the evidence with respect to their professional petroleum expert, Ronald Gibson.

* * * [E]xpert testimony * * * must comply with Evid.R. 702 to be admissible during summary judgment proceedings. "Pursuant to Civ.R. 56(C), a court may not consider any evidence when ruling on a motion for summary judgment unless it conforms with Civ.R. 56." *Douglass v. Salem Community Hosp.,* 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, at ¶ 21. According to Civ.R. 56(E), "(s)upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Thus, affidavits containing opinions must meet the requirements in the Rules of Evidence governing the admissibility of opinions. See *Tomlinson v. Cincinnati* (1983),

4 Ohio St.3d 66, 4 OBR 155, 446 N.E.2d 454, paragraph one of the syllabus; see, also, *Douglass.*

The trial court has broad discretion in determining the admissibility of expert testimony, and we may reverse only if the trial court abused its discretion. See *Kumho Tire Co. v. Carmichael* (1999), 526 U.S. 137, 152-153, 119 S.Ct. 1167, 143 L.Ed.2d 238; see, also, *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 616, 687 N.E.2d 735. "Abuse of discretion" implies that a court acted in "an unreasonable, arbitrary, or unconscionable manner." See, e.g., *State ex rel. Sartini v. Yost,* 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, at ¶ 21; *State v. Herring* (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An abuse of discretion amounts to more than an error of judgment and instead equates to "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. Furthermore, when applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. See, e.g., *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

In general, courts should admit expert testimony whenever it is relevant and satisfies Evid.R. 702. *State v. Nemeth* (1998), 82 Ohio St.3d 202, 207, 694 N.E.2d 1332; see, also, *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 629OBR 144, 446 N.E.2d 444. Thus, the trial judge must perform a "gatekeeping" role to ensure that expert testimony is sufficiently (a) relevant and (b) reliable to justify its submission to the trier of fact. See *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238; *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Nemeth,* 82 Ohio St.3d at 211, 694 N.E.2d 1332; *Douglass,* 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, at ¶ 32.

*Valentine v. PPG Industries, Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, ¶ 21-23 (4th Dist.).

**{¶13}** Contrary to Appellants' assertion, the trial court neither wrongly determined the credibility nor improperly weighed the evidence with respect to their expert witness, Ronald Gibson. Rather, we stress that the trial court acted within its discretion in disregarding/striking Gibson's opinions because his testimony was unreliable. *See Valentine, supra*, at ¶ 22-23.

**{¶14}** Gibson opined that the Christman Well has not produced oil or gas in paying quantities since the parties entered into the Lease. Gibson opined that the Christman Well has operated at a loss each and every year, at a total loss exceeding $13,140.87. Gibson admitted, however, that his assumptions regarding the combined cost of handling and trucking oil and brine water, and of disposing brine water, were "*absurd.*" (Emphasis added.) (12/5/2018 Deposition of Gibson, p. 176-177). In addition, many of the assumptions in Gibson's report regarding Condevco's operating expenses were *baseless.* Gibson acknowledged using an *incorrect*, assumed labor rate for Condevco's employees relating to the Christman Well. Also, Gibson admitted that his assumed ratio of oil to water produced from the Christman Well was based on *old* estimates which could indicate that his ratio was *not correct*.

**{¶15}** Thus, based on the facts presented, including Gibson's own admission as to the unreliability of his assumptions, the trial court did not abuse its discretion in disregarding/striking his testimony as it was clearly unreliable.

**{¶16}** Appellants' first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**GENUINE ISSUES OF MATERIAL FACT REMAIN AS TO WHETHER: (1) CONDEVCO ADOPTED THE CHRISTMAN WELL AND (2) THE CHRISTMAN WELL WAS PRODUCING OIL AND/OR GAS IN PAYING QUANTITIES.**

Oil and gas leases are contracts, and therefore, "'(t)he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the

written instrument.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶ 9, quoting *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897). "It is a well-known and established principle of contract interpretation that '(c)ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.'" *Lutz* at ¶ 9, quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus.

The burden of proof with respect to an oil and gas lease case is not controlled by substantive oil and gas law, but, rather, by civil procedure. *Pfalzgraf v. Miley*, 7th Dist. Monroe, 2018-Ohio-2828, 116 N.E.3d 893, ¶ 32, *reconsideration denied*, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-3595, 2018 WL 4265449, *and appeal not allowed*, 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 552 (2018). The party who asserts a claim in an oil and gas case carries the burden of proof, just as in any other civil case. *Id.* at ¶ 45.

After the primary term of an oil and gas lease expires, the lease terminates by the express terms of the contract and by operation of law, and revests the leased estate in the lessor, if the conditions of the secondary term are not being met. *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), ¶ 63. Typically, the secondary term of the lease is conditioned on oil or gas being produced in paying quantities. *Dennison Bridge, Inc. v. Resource Energy, L.L.C.*, 7th Dist. Harrison, 2015-Ohio-4736, 50 N.E.3d 242, ¶ 21.

Ohio courts have recognized forfeiture as an appropriate remedy only in certain, limited circumstances: (1) when the lease specifically and expressly provides for such a remedy; (2) when legal damages resulting from a contractual breach are inadequate; (3) upon a breach of implied covenants; (4) upon a claim of abandonment; or (5) when necessary to do justice. *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 134-135, 443 N.E.2d 504, 508

(1983). When causes for forfeiture are explicitly delineated in the lease, others cannot be implied. *Beer v. Griffith*, 61 Ohio St.2d 119, 121-122, 399 N.E.2d 1227 (1980).

* * *

The term "paying quantities," when used in the habendum clause of an oil and gas lease, generally means quantities of oil or gas sufficient to yield even a small profit to the lessee over operating expenses, even though such things as drilling costs or equipping costs are not recovered, which may result in the undertaking as a whole suffering a loss. *Blausey v. Stein*, 61 Ohio St.2d 264, 265-266, 400 N.E.2d 408 (1980). In determining whether a well is profitable, courts look to the discretion of the lessee. *Lang v. Weiss Drilling Co.*, 7th Dist., 2016-Ohio-8213, 70 N.E.3d 625, ¶ 34. Although the lessee has discretion to determine a well's profitability, that determination cannot be arbitrary. *Id.* Courts impose a standard of good faith on the lessee. *Pfalzgraf v. Miley*, 7th Dist. Monroe, 2018-Ohio-2828, 116 N.E.3d 893, ¶ 17-19, reconsideration denied, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-3595, 2018 WL 4265449, ¶ 17-19, and appeal not allowed, 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 552, ¶ 17-19 (2018).

*Jacobs v. Dye Oil, LLC*, 7th Dist. Monroe No. 18 MO 0020, 2019-Ohio-4085, ¶ 41-44, 61.

{¶17} First, Appellants argue Condevco did not legally adopt the Christman Well because ODNR records show it was instead adopted by Heinrich Enterprises. Appellants assert that only Condevco had the option to adopt an existing well and return it to production.

{¶18} The plain language of the Lease gave Condevco the right to adopt an orphan well and to maintain the term of the Lease by restoring it to production. As stated, the Lease provides that it continues for a term of three years "and as long thereafter as oil or gas is produced from said leased premises." (Lease, Paragraph 2). The Lease further states that for a well adopted by the lessee "any royalty income will be considered

Case No. 19 MO 0008

to have the same effect as a newly drilled well for purposes of this lease."  (Lease, Paragraph 20).

**{¶19}** One of the duties associated with the adoption of a well is placing it on a bond with ODNR.  The continuation of the Lease depends on the well's production, not on whether or when the well is transferred with ODNR.  Submitting an ODNR transfer of ownership form is not a condition on the term of the Lease in the habendum clause.  In fact, nothing in the Lease prohibits Condevco from delegating or transferring its duties to a third party.  Thus, under the Lease, Condevco had the right to delegate the responsibility for bonding the Christman Well to Heinrich Enterprises.  *See Kuhens v. Weaver*, 7th Dist. Carroll No. 643, 1996 WL 172369, *4 (Apr. 5, 1996), citing *Illinois Controls, Inc. v. Longham*, 70 Ohio St.3d 512, 524 (1994); *Chapin v. Longworth*, 31 Ohio St. 421 (1877) ("[a]bsent a clause making delegation ineffective, a party may generally delegate his or her duties under a contract" to a third party.)

**{¶20}** Christy Chavez explained the relationship between Condevco and Heinrich Enterprises in her deposition.

Q. Does Heinrich Enterprises do business with Condevco?
A. Yes.
Q. And did Heinrich Enterprises do anything with Condevco related to the Talbott or the Christman wells?
A. Yes.
* * *
Q. Which well or wells does it do business with Condevco on?
A. Both.
Q. And what does Heinrich Enterprises do?
A. It is the bond holder with the state.
Q. Can you explain to me how that works? It is the bond holder for Condevco's wells?
A. Yes.
Q. And for Heinrich Production's wells?
A. Yes.
Q. Can you explain how that works?

Case No. 19 MO 0008

A. The bond with ODNR is Heinrich Enterprises and those companies have agreements with Heinrich Enterprises and they hold the bonds. So they're the regulatory holder of the bond for all of the wells.

Q. When you say that they have agreements, do they have written agreements?

A. I don't know.

Q. When you say agreements exist, I guess I am trying to figure out if they are written down. If they are not written down, how do you know you have an agreement?

A. Because I am an owner in those companies and that is my understanding. That system has been set up for years.

Q. That is just how it has been done. That does not mean that an agreement exists, right? That is how it has been done for years?

A. Yes. And at the very least, there is a verbal agreement.

Q. But the verbal agreement would have to be between the same people that own the same companies?

A. Yes.

Q. So you actually had a conversation with yourself about what the agreement was?

A. We made that decision, yes.

(1/22/2018 Deposition of Christy Chavez, p. 36-38).

{¶21} In addition, Appellees' expert, Eddy Biehl, a managing member of Stonebridge Operating Co., LLC and President of Positron Energy Resources, Inc., filed an affidavit on October 9, 2018.  Biehl possesses a degree in Economic Geology from Harvard and has been qualified as an expert in the oil and gas industry.  Biehl averred that "it is common for a well to be held in the name of an operator with ODNR and for the name of the operator to differ from the actual owner of the working interest under the lease."  (10/9/2018 Affidavit of Biehl).

**{¶22}** Accordingly, there is no basis for this court to conclude that Condevco failed to adopt the Christman Well by placing it on the bond with its affiliated sister company, Heinrich Enterprises.

**{¶23}** Second, Appellants allege that the Christman Well was not producing oil and/or gas in paying quantities.

**{¶24}** Again, the Lease provides for a three-year primary term, expiring on March 12, 2012. (Lease, Paragraph 2). The secondary term of the Lease provides that the Lease will continue so long as oil or gas is produced in paying quantities from the leased premises or lands unitized or pooled with the leased premises, or drilling operations are continuously prosecuted on the leased premises, or the land is used for gas or substance injection purposes. (*Id.*)

**{¶25}** The evidence establishes that Condevco adopted the Christman Well and restored it to production before the expiration of the primary term of the Lease. The evidence further reveals there has been continuous production of oil and/or gas from the Christman Well in the secondary term of the Lease.

**{¶26}** As stated, Appellants' expert, Gibson, opined that the Christman Well has not produced oil or gas in paying quantities since the parties entered into the Lease. Gibson admitted, however, that his assumptions were absurd, baseless, and incorrect. Thus, Gibson's testimony was clearly unreliable and should not have been considered.

**{¶27}** Biehl averred in his affidavit that he has personal knowledge of the facts and reviewed all documents "for the purpose of writing a report and offering opinions relating to whether * * * the 'Christman Well' is or was producing oil and/or gas in paying quantities." (10/9/2018 Affidavit of Biehl). The report provided a full and detailed analysis of, and support for, how Biehl reached his opinion. Specifically, Biehl concluded: "Based on my review of the documents listed in my Report, my education and training, and my experience, it is my opinion, to a reasonable degree of professional certainty, that the Christman Well is producing and has produced oil and/or gas in paying quantities from March 2011 to present." (*Id.*)

**{¶28}** Furthermore, as averred by Brian and Christy Chavez, since it was reworked through May 2016, the Christman Well produced $6,315.75 in gross revenue, yielding a net income of $4,664.20, or $2,263.55 if factoring in labor charges. Excluding

all of Condevco's capital expenditures, the revenue from the Christman Well exceeds its operating costs. Thus, the Christman Well produced oil and/or gas in paying quantities. *Id.*; *See Blausey, supra,* at 265-266 ("[t]he term 'paying quantities,' when used in the habendum clause of an oil and gas lease, generally means quantities of oil or gas sufficient to yield even a small profit to the lessee over operating expenses[.]")

**{¶29}** According to Brian Chavez, Condevco determined that the most efficient manner of producing oil from the Christman Well is by pumping it just three to four times per month. Condevco has kept its operating expenses low on the Christman Well by using its own employees. Condevco has also kept its expenses low by assigning the well tender a large group of wells, pipelines, meters, and compressors in a given geographic area. These facts should apply to Condevco's benefit in determining that the production is in paying quantities. *See Blausey, supra,* at 266 ("The fact that a lessee can keep operating costs at a minimum should inure to his benefit in a determination of whether a well produces in paying quantities.")

**{¶30}** Having met their initial burden for purposes of Appellees' motion for summary judgment, Appellants had a reciprocal burden to produce evidence on any issue for which they bear the burden of proof at trial. Appellants failed, however, to present admissible evidence that a reasonably prudent operator would not continue to operate the Christman Well in good faith. *See generally Paulus v. Beck Energy Corp.*, 7th Dist. Monroe No. 16 MO 0008, 2017-Ohio-5716, ¶ 76 (A good faith standard is imposed on the lessee's judgment when determining paying quantities of oil or gas from a well). No credible evidence exists to dispute that Condevco's conclusions are in good faith, i.e., that the Christman Well produced paying quantities during the secondary term of the Lease.

**{¶31}** Appellants have been attempting to cancel the Lease since the action was filed in May 2016. Appellants, however, cannot use prolonged litigation to stifle additional investment that otherwise would have taken place on the Lease and then use that lack of additional investment as a reason for terminating the Lease. In determining whether the Lease has been maintained in the secondary term by production in paying quantities, the proper inquiry is limited to the production that occurred during the period of time prior to the onset of the litigation between the parties. *See Jicarilla Apache Tribe v. Andrus*, 687

F.2d 1324, 1341 (10th Cir.1982) ("When a lessor actively asserts to a lessee that his lease is terminated or subject to cancellation, the obligations of lessee to lessor are suspended during the time such claims of forfeiture are being asserted"); *see also Summitcrest, Inc. v. Eric Petroleum Corp.,* 7th Dist. Columbiana No. 12 CO 0055, 2016-Ohio-888, ¶ 44 (Holding that the term of an oil and gas lease should be tolled in equity "to preserve the status quo where the validity of those leases is challenged.  * * * The remedy prevents leases from expiring on their own terms while the outcome of litigation challenging the lease is decided by the courts.")  Thus, the Lease cannot be terminated for lack of production during the period after the lawsuit had been filed.

{¶32} Upon consideration, the trial court properly granted Appellees' motion for summary judgment.

{¶33} Appellants' second assignment of error is without merit.

## CONCLUSION

{¶34} For the foregoing reasons, Appellants' assignments of error are not well-taken.  The judgment of the Monroe County Court of Common Pleas granting summary judgment in favor of Appellees is affirmed.

Waite, P.J., concurs.

Robb, J, concurs.

Case No. 19 MO 0008

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**